UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                      Case No. 14-C-0522

JAIME ROMERO-RAMIREZ,

    Defendant.

---

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 10), ENTERING JUDGMENT REVOKING DEFENDANT'S CITIZENSHIP, AND REQUIRING DEFENDANT TO SURRENDER HIS CERTIFICATE OF NATURALIZATION AND OTHER INDICIA OF CITIZENSHIP IMMEDIATELY

The United States moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the ground that the pleadings demonstrate that defendant Jaime Romero-Ramirez should be denaturalized under Counts II (concealment of material facts and willful misrepresentation) and III (illegal procurement) of the complaint. For the reasons set forth below, the motion will be granted.

FINDINGS OF FACT

Romero-Ramirez either admits the allegations as set forth in the complaint or otherwise states that he does not have enough information to admit or deny. (Doc. 5.) The documents submitted with the motion are incorporated by reference to the pleadings and/or are matters of public record. Hence, the government's motion for judgment on the pleadings need not be converted into one for summary judgment. *See Baker v. Potter*, 175 Fed. App'x. 759, 762 (7th Cir. 2006).

On March 28, 1996, Romero-Ramirez was charged in the District Court of Oklahoma County, Oklahoma with: (1) felony transportation of proceeds derived from a violation of the

Uniform Controlled Dangerous Substance Act, in violation of Oklahoma Statutes tit. 63, § 2-503.1(b); (2) felony possession of cocaine, in violation of Oklahoma Statutes tit. 63, § 2-402; (3) misdemeanor possession of marijuana, in violation of Oklahoma Statutes tit. 63, § 2-402; and (4) felony maintaining a vehicle where a controlled dangerous substance is kept, in violation of Oklahoma Statutes tit. 63, § 2-404. (Doc. 1, ¶ 7.) Romero-Ramirez pleaded nolo contendere to all four counts on October 6, 1997, received suspended sentences of five years and was placed on probation for that period. (*Id.*, ¶ 8.)

On November 19, 2003, Romero-Ramirez filed Form N-400 Application for Naturalization with U.S. Citizenship and Immigration Services ("USCIS"). (*Id.*, ¶ 9.) In his Form N-400 Application, Romero-Ramirez checked "No" in response to the following questions:

> Have you EVER been charged with committing any crime or offense?
> Have you EVER been convicted of a crime or offense?
> Have you EVER received a suspended sentence, been placed on probation, or been paroled?

(*Id.*, ¶¶ 10-12.)

On October 4, 2004, USCIS Officer Bruce Dickson interviewed Romero-Ramirez regarding Romero-Ramirez's Form N-400 Application to determine his eligibility for naturalization. (*Id.*, ¶ 13.) At the beginning of the interview, Officer Dickson placed Romero-Ramirez under oath. (*Id.*, ¶ 14.) Additionally, Officer Dickson asked Romero-Ramirez if he had ever been charged with or convicted of committing any crime or offense and Romero-Ramirez responded that he had not. (*Id.*, ¶¶ 15, 16.) Romero-Ramirez also told Dickson that he had never received a suspended sentence, been placed on probation, or been paroled, and signed the Form N-400 Application in the presence of Officer Dickson

2

swearing that the contents of his application were true to the best of his knowledge. (*Id.*, ¶¶ 17, 20.) The testimony was false and Romero-Ramirez did not disclose his prior charges, his convictions, or his suspended sentences. (*Id.*, ¶ 18.)

Based upon the information supplied by Romero-Ramirez in his Form N-400 Application and the sworn answers he gave during his October 4, 2004, naturalization interview, USCIS approved Romero-Ramirez's Form N-400 Application. (*Id.*, 21.) Romero-Ramirez became a naturalized United States citizen on November 19, 2005, and was issued Certificate of Naturalization No. 28639717. (*Id.*, ¶ 22.)

On January 6, 2009, after Romero-Ramirez was naturalized, he was charged in the United States District Court for the Eastern District of Wisconsin by superseding indictment with knowingly making a material false statement under penalty of perjury in a document required by the immigration laws or regulations in violation of 18 U.S.C. § 1546(a). (*Id.*, ¶ 23.) The criminal charge arose out of Romero-Ramirez's signature on and testimony concerning his Form N-400 Application during his October 4, 2004, naturalization interview, and was based on Romero-Ramirez's four Oklahoma convictions in 1997. (*Id.*, ¶ 24.) A jury found Romero-Ramirez guilty on January 14, 2009, of knowingly making a material false statement under penalty of perjury in a document required by the immigration laws or regulations. (*Id.*, ¶ 25.)

CONCLUSIONS OF LAW

When considering a motion for judgment on the pleadings pursuant to Rule 12(c), the court must apply the same legal standards that govern motions to dismiss under Rule 12(b)(6) (failure to state a claim on which relief can be granted). *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL–CIO*, 335 F.3d 643,

3

647 (7th Cir. 2003). A court may not grant a motion under Rule 12(c) "unless it appears beyond a doubt that the non-moving party cannot prove any facts that would support his claim for relief." *Id*. (citations and alterations omitted). In deciding such a motion, the court may consider only the pleadings: the complaint, answer, and any written instruments attached as exhibits. *Housing Auth. Risk Retention Grp., Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004).

Section 1451(a) provides for revocation of naturalization and cancellation of the order granting citizenship (1) if the naturalization was illegally procured or (2) procured by concealment of a material fact or by willful misrepresentation. 28 U.S.C. § 1451(a). According to the United States, the court may denaturalize Romero-Ramirez on one or both grounds. Romero-Ramirez illegally procured his citizenship by committing a crime involving moral turpitude (CIMT) during the statutory period, and he procured his naturalization by willfully misrepresenting and concealing his criminal history. Romero-Ramirez concedes that he has not found any precedent that his violation of 18 U.S.C. § 1546(a) is not a CIMT; however, he believes "the CIMT is fairly characterized as willful misrepresentation or concealment of a material fact" and that the United States should have to show that his false statement procured naturalization.

Romero-Ramirez's argument is not supported by law or precedent. First, the court may denaturalize Romero-Ramirez because he illegally procured his naturalization. One statutory requirement for naturalization is that the applicant must have possessed good moral character during the five-year period prior to the application for naturalization and maintained such character up to the administration of the oath. 8 U.S.C. § 1427(a); *see also* 8 C.F.R. § 316.10(a)(1). An applicant lacks good moral character if during the statutory

4


period the applicant committed one or more crimes involving moral turpitude ("CIMT") for which the applicant was convicted or has given false testimony to obtain any benefit from the Act. 8 C.F.R. § 316.10(b)(2)(I) and (vi). Indeed, the Immigration and Nationality Act provides that a person cannot establish good moral character if the person is convicted of or admits to committing a CIMT during that statutory period. 8 U.S.C. § 1101(f)(3) (cross-referencing 8 U.S.C. § 1182(2)(A)(i)(I)); 8 C.F.R. § 316.10(b)(2)(I)).

Here, a jury convicted Romero-Ramirez of knowingly making a false statement, under the penalty of perjury, regarding his Form N-400 Application during his October 4, 2004, naturalization interview in violation of 18 U.S.C. § 1546(a). (Doc. 5, ¶ 47.) As such, Romero-Ramirez was convicted of a crime committed during the statutory period. (Doc. 5, ¶¶ 25-26, 48.) For purposes of this proceeding, it is inconsequential that the proof of the offense occurred after the statutory period because the offense occurred during the requisite period. *See United States v. Suarez*, 664 F.3d 655, 659-60 (7th Cir. 2011).

Additionally, Romero-Ramirez's record of conviction established that his crime involved moral turpitude and Romero-Ramirez admits as such. In *Marin-Rodriguez v. Holder*, the Seventh Circuit Court of Appeals held that a conviction for using a fraudulent Social Security card to obtain and maintain employment in violation of 18 U.S.C. § 1546(a) was a "crime involving moral turpitude." 710 F.3d 734, 739 (7th Cir. 2013). The court reasoned:

> Crimes entailing an intent to deceive or defraud are unquestionably morally turpitudinous. *See Jordan v. De George*, 341 U.S. 223, 232, 71 S. Ct. 703, 95 L.Ed. 886 (1951) ("[T]he decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude."); *Abdelqadar v. Gonzales*, 413 F.3d 668, 671 (7th Cir.2005) ("Crimes entailing deceit or false statement are within the core of the common-law understanding of 'moral turpitude.'"); *Padilla*, 397 F.3d at

5

> 1020–21 (collecting cases). And in *Lagunas–Salgado v. Holder*, we held that selling fraudulent immigration documents to illegal aliens is morally turpitudinous because it "involves inherently deceptive conduct." 584 F.3d at 712. Similarly, other circuits have recognized that the use of false immigration documents involves the kind of deceit or fraud that renders a crime morally turpitudinous. *See, e.g., Lateef v. Dep't of Homeland Sec.*, 592 F.3d 926, 928, 931 (8th Cir. 2010) (holding alien's conviction for "using an unlawfully obtained social security number" was for a crime involving moral turpitude); *Omagah v. Ashcroft*, 288 F.3d 254, 261–62 (5th Cir. 2002) (affirming Board ruling that "conspiracy to possess [illegal immigration documents] with intent to use does rise to the level of moral turpitude . . . .")
>
> . . . .
>
> . . . . By knowingly presenting a false Social Security card to an employer to obtain and maintain unauthorized employment, Rodriguez not only violated the law by also engaged in deceptive conduct.

*Id.* at 738.

With respect to Romero-Ramirez, the jury returned a guilty verdict on count one of the superseding indictment, False Application for Naturalization, in violation of 18 U.S.C. § 1546(a). *United States v. Romero*, Case No. 07-CR-271. That means the jury found beyond a reasonable doubt that Romero-Ramirez (1) made a material statement in an application for a document required by the immigration laws or regulations, (2) knowingly made that statement, (3) under oath or penalty of perjury; and (4) with knowledge that the statement was false. It follows that Romero-Ramirez engaged in the same type of "directly deceptive conduct" present in *Marin-Rodriguez*. Mindful that the government carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship, *Federoenko v. United States*, 449 U.S. 490, 505, 191 S. Ct. 737, 66 L. Ed. 2d 686 (1981), the court finds that Romero-Ramirez illegally procured naturalization because he lacked the good moral character necessary to lawfully naturalize.

6

However, that is not the only bases on which the court should enter a judgment of denaturalization. The United States also established that Romero-Ramirez procured his citizenship by willfully misrepresenting or concealing a material fact. 8 U.S.C. § 1451. Denaturalization based on willful misrepresentation or concealment requires a showing that: (1) the naturalized citizen misrepresented or concealed some fact; (2) the misrepresentation or concealment was willful; (3) the misrepresented or concealed fact was material; and (4) the naturalized citizen procured citizenship by the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767, 108 S. Ct. 1537, 99 L. Ed. 2d 839 (1988).

While representing to immigration officials that he had not been convicted of an offense, Romero-Ramirez knew that the representation was false and was subsequently convicted of making that representation under the penalty of perjury. Indeed, Romero-Rameriz does not deny that he failed to disclose his Oklahoma criminal convictions on his naturalization application and that the misrepresentation was knowingly false, voluntary, willful, and material. Nevertheless, Romero-Ramirez asserts that the government cannot establish that his citizenship was "procured" as a result of misrepresentation.

The United States Supreme Court split over what the "procurement" requirement demands beyond "that citizenship be obtained as a result of the application process in which the misrepresentations or concealments were made." *Kungys*, 485 U.S. at. 776. The Seventh Circuit addressed this split and concluded that the government only prevails if the citizen misrepresented a material fact and it is "fair to infer that the citizen was actually ineligible" for citizenship. *United States v. Latchin*, 554 F.3d 709, 713-714 (7th Cir. 2009). In *Latchin*, the defendant concealed and misrepresented information about his employment, travel, and association that reflected his ongoing relationship with the Iraqi Intelligence

7

Service ("IIS"). *Id.* The *Latchin* court found a fair inference of ineligibility, writing that it "defies common sense to think that the INS would have naturalized a man who worked for years as a spy for a hostile regime and who had at least some ongoing relationship with the IIS." *Id.* at 714.

Using this same reasoning, the court finds that it is fair to infer that Romero-Ramirez was ineligible for naturalization. He concedes that he "is a person described in 8 U.S.C. § 1182(a)(2)(A)(i)(II) on account of his Oklahoma drug convictions." (Doc. 14 at 2.) While it is true that the Oklahoma convictions fall outside of the five-year statutory period, the Attorney General is not limited to the applicant's conduct during the five years preceding the filing of the application and may take into consideration as a determination of good moral character the applicant's conduct and acts at any time prior to that period. 8 U.S.C. § 1427(d); 8 C.F.R. § 316.10(a)(2). Not only is it fair to infer that Romero-Ramirez was ineligible, he has not even argued that he had good moral character at the time he applied for naturalization and, therefore, would have been found eligible to become an American citizen notwithstanding his criminal drug-related convictions. Now, therefore,

IT IS ORDERED that plaintiff's motion for judgment on the pleadings is granted.

IT IS FURTHER ORDERED that judgment shall be entered revoking Romero-Ramirez's citizenship.

Dated at Milwaukee, Wisconsin, this 23rd day of July, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

8